**FIREMEN'S INSURANCE COMPANY OF NEWARK, Plaintiff,**

v.

**BAUER DENTAL STUDIO, INC., and Dailey Dental, Inc., Defendants.**

No. CIV 84–4284.

United States District Court, D. South Dakota, S.D.

Dec. 3, 1985.

Edwin E. Evans and Mary J. Hertz, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for plaintiff.

John L. Morgan, of Morgan, Fuller, Theeler & Cogley, Mitchell, S.D., for defendant Bauer Dental Studio, Inc.

## MEMORANDUM OPINION

NICHOL, Senior District Judge.

Plaintiff, Firemen's Insurance Company of Newark (Company) brought this diversity action against its insured, Bauer Dental Studio, Inc. (Bauer), and Dailey Dental, Inc. (Dailey), seeking a declaration of no coverage under a comprehensive general liability insurance policy issued by the Company to Bauer. Plaintiff is an insurance company incorporated under the laws of a state other than South Dakota and licensed to sell insurance in South Dakota. Defendants Bauer and Dailey are corporations incorporated under the laws of South Dakota with their principal places of business in Mitchell, South Dakota. Bauer manufactures dental prostheses, including dental crowns, the subject of this litigation. Dailey is a professional dental corporation providing dental services to patients. The amount in controversy exceeds $10,000, exclusive of interest and costs.

Production of the dental crowns occurred in three stages. First, Dailey took impressions of a patient's tooth, produced a mold, and prescribed the specifications of a crown for that patient. The mold and prescription were then sent to Bauer and used to manufacture the crown. During the period in question, Bauer utilized a metal alloy known as Biocast to construct the crowns, covering the metal with a porcelain veneer. Finally, Dailey inserted the crown in the patient's mouth after fitting, grinding and polishing it to achieve the correct bite and proper fit.

On April 6, 1980, the Company issued to Bauer a comprehensive general liability insurance policy effective through April 16, 1983. Beginning in late 1981, Dailey received complaints from patients that numerous dental crowns, manufactured and sold to Dailey by Bauer, were fracturing and cracking. Bauer reported a claim to its local insurance agent on May 11, 1982. The claim was submitted to the Company's Minneapolis office, which denied coverage based upon exclusions (n), (o), and (p) of the insurance policy. These provisions excluded from coverage property damage stemming from the insured's work product, and read as follows:

This insurance does not apply:

(n) to property damage to the named insured's products arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

The Company's local insurance agent and the insured's attorney disputed this finding of no coverage. While it was conceded that Bauer's costs of manufacturing new crowns to replace the cracked ones were not covered, they contended that Dailey's

costs of removing the old crowns and purchasing and installing the new ones were covered.

Because its decision was disputed, the Minneapolis office submitted the question to the regional supervisor's office in Chicago pursuant to company policy. The regional office determined on October 22, 1982, that Dailey's costs were indeed covered by the policy, and the Company's home office in New Jersey confirmed that decision. Bauer was informed of this decision on February 1, 1983; the Company then set up a reserve fund for the claim, and commenced an investigation and settlement negotiations with Dailey.

Negotiations were unsuccessful, and in November of 1984 Dailey filed suit in state court against Bauer. Dailey's complaint alleged that the fracturing of the Biocast metal alloy from which the dental crowns had been manufactured had caused lines and stains on the porcelain veneer, and that Bauer had breached its implied warranty of fitness and had negligently misrepresented the suitability and safety of its product. Dailey sought damages for the cost of replacement as well as for injured reputation.

Bauer advised the Company of Dailey's lawsuit and requested that the Company defend against it as provided in the insurance policy. The Company, however, reversed its position, asserted that the policy did not cover Dailey's claim, and filed this action seeking a declaratory judgment to that effect. The case was tried to the Court on September 19 and 20, 1985, and the parties have submitted post-trial briefs.

The policy's insuring clause provides: The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any allegations of the suit are groundless, false or fraudulent. . . .

"Bodily injury" is defined in the policy as "bodily injury, sickness or disease, sustained by any person which occurs during the policy period, including death at any time resulting therefrom." "Property damage" is defined as

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Finally, an "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

The Company argues that the Dailey claim is not covered because the damages alleged in the complaint, cost of replacement and loss of reputation, do not constitute property damage within the meaning of the insuring clause. Even if there is property damage, the Company argues alternatively that the policy does not apply to such damage under exclusions (n), (o), and (p) because the damage was to the insured's work product—the dental crowns.

The Company conceded at trial that the cracking of the crowns was an "occurrence." It is contended, however, that coverage is afforded only for further damage, resulting from the "occurrence," to property other than the insured's product. Since the only damage here was to the dental crowns, which were Bauer's work product, the Company maintains there can be no coverage under the policy. The Company cites no cases in support of its theory and relies on the language of the policy.

The Court agrees that the policy requires some further property damage resulting from the cracked crowns manufactured by Bauer before coverage is triggered. How-

ever, as the Company acknowledged at trial, the finished product in this case did not consist solely of Bauer's work but included the additional services and workmanship of Dailey in grinding, fitting, polishing and bonding the dental crown. The Court finds that the completed product—a fully and properly installed crown—was distinct from the initial product manufactured by Bauer. Thus, the insured's defective product caused further property damage in the form of diminished value of the completed product. This property damage, measured by Dailey's cost of replacement, is covered by the insuring clause of the policy because it is "physical injury to . . . tangible property," and is not excluded under clauses (n), (*o*), and (p) because it is not strictly the work product of the insured.

While the Court has found no cases involving dental or medical prostheses, cases dealing with the construction of buildings present substantially similar considerations. In *Hauenstein v. Saint Paul Mercury Indemnity Co.*, 242 Minn. 354, 65 N.W.2d 122 (1954), the insured produced plaster and sold it to a contractor for use in the construction of a hospital. After application, the plaster shrank and cracked, making it necessary for the contractor to remove it and replaster the walls and ceilings. Construing policy language similar to that in the case at bar, the court held that while the plaster was excluded as the product of the insured, the use of the plaster had caused a reduction in value of the building which constituted property damage distinct from the damaged plaster itself. *Id.* at 125–26.

The *Hauenstein* ruling was adopted by the South Dakota Supreme Court in *Dakota Block Co. v. Western Casualty & Surety Co.*, 81 S.D. 213, 132 N.W.2d 826 (1965). There, the insured manufactured a type of block on which a colored polyester glaze had been baked. The insured sold the block to a contractor for use in constructing the walls of a school building. Sometime after completion of the building, the colored glaze became faded and discolored causing the building to take on a mottled and unsightly appearance. Following *Hauenstein*, the South Dakota court held that the completed school building was a separate product from the colored blocks manufactured by the insured, and that therefore the reduced value of the building caused by the defective glaze constituted property damage covered by the insured's policy. *Id.* at 830. *Cf. Haugan v. Home Indemnity Co.*, 86 S.D. 406, 197 N.W.2d 18 (1972) (insured constructed building with defective foundation; damage held to be excluded from policy because completed building was entirely the work product of the insured).

The Court finds *Hauenstein* and *Dakota Block* to be controlling. The completed product in this case consisted of not only the dental crown as manufactured by Bauer but also the professional services of Dailey in properly inserting the crown. The integration of Bauer's product and Dailey's workmanship created, for purposes of the insurance policy in question, a product separate and distinct from the crowns initially manufactured by Bauer. The reduced value of this final product constitutes "property damage" caused by the fracturing of the crowns. Because the final product was not solely the work of the insured, the property damage is not excluded under clauses (n), (*o*), and (p). Thus, the Court holds that Dailey's cost of replacing the crowns is covered by Bauer's policy. The Company is accordingly liable for such costs and is under a duty to defend Bauer in the action against it by Dailey.

This opinion constitutes the Court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a).