**LORAL FAIRCHILD CORPORATION,**
**Plaintiff,**

**v.**

**VICTOR COMPANY OF JAPAN,**
**LTD., et al., Defendants.**

**LORAL FAIRCHILD CORPORATION,**
**Plaintiff,**

**v.**

**MATSUSHITA ELECTRIC INDUSTRIAL**
**COMPANY, LTD., et al., Defendants.**

Civil A. Nos. 92–0128–ARR, 91–5056–ARR.

United States District Court,
E.D. New York.

Jan. 5, 1996.

James H. Wallace, Jr., John B. Wyss, and Gregory Lyons, of Wiley, Rien & Fielding, Washington, DC; and Anthony W. Karambelas, Newport Beach, California, for plaintiff.

Douglas B. Henderson, Barry W. Graham, Robert E. Converse, John C. Lowe, Steven

M. Anzalone, Jeffrey A. Berkowitz, and Vincent P. Kovalick, of Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, for Sony defendants.

RADER, Circuit Judge (Sitting by Designation).

In this patent case, Loral Fairchild Corporation (Loral) alleges numerous electronics companies willfully infringed certain claims of United States Patents 3,896,485 ("the '485 patent") and 3,931,674 ("the '674 patent"). *See Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.,* 906 F.Supp. 798 (E.D.N.Y.1995). Defendants deny liability and raise several defenses. Loral and Sony Corporation and Sony Electronics Inc. (collectively Sony) will present their case to a jury beginning on January 8, 1996. Loral will have trials with the remaining defendants in successive proceedings beginning in April of 1996.

On December 29, 1995, Sony filed a motion for sanctions or in the alternative for equitable relief. Sony's motion seeks to preclude Loral from asserting that claims 7 and 8 of the '485 patent encompass more than a method of operating the structure of claim 1 of that patent. The court has heard oral argument on Sony's motion. For the following reasons, the court will grant the motion.

## BACKGROUND

Loral Fairchild has consistently asserted in this action that claims 7 and 8 of the '485 patent describe methods of operating the structure of claim 1. On November 5, 1991, Sony served an interrogatory on Loral which asked Loral to describe how claim 7 corresponds to each of the accused Sony products and processes. In two separate responses, Loral replied: "See, above discussion corresponding to 1(a)–(d) [corresponding to its responses on elements (a) through (d) of claim 1]." *See* Exs. 1 and 2 to Sony's Memorandum in Support of Defendants Sony Corporation and Sony Electronics Inc. Motion for Sanctions Against Loral Fairchild Corporation's Violation of Fed.R.Civ.P. 26(e)(2) [hereinafter referred to as Sony's Memorandum] (attaching Loral's March 25 and September 22, 1993, responses to Sony's interrogatory No. 1). From the outset of this case, Loral limited the method of claim 7 to operation of the structure of claim 1.

Sony then served various requests for admission on Loral. It sought Loral's admission that the "charge sink region" in claim 7 does not read, either literally or by equivalence, on Sony CCDs having a vertical overflow drain structure. Loral denied the request stating: "Loral refers Sony to its infringement contentions set forth in Loral's Amended Response to Sony Corporation of America's Interrogatory No. 1." This denial referred back to the identified structures corresponding to the elements of claim 1 only. *See* Ex. 3 to Sony's Memorandum (attaching Loral's April 19, 1993, supplemental responses to Sony's first set of requests for admission).

Apparently dissatisfied with Loral's responses as to claims 7 and 8, various defendants sought assistance from the court. During a May 19, 1993, hearing, Magistrate Judge Carter ordered Loral to provide "detailed infringement contentions" on claims 7 and 8. Counsel for Loral wrote to Sony: "Claims 7 & 8 of the ['485] Patent are method claims which delineate a method of operation for the structure of claim 1." The August 27, 1993, letter then refers Sony to Loral's infringement contentions of claim 1. *See* Exs. 4 and 5 to Sony's Memorandum (attaching August 1993 correspondence between counsel for Sony and counsel for Loral).

On October 7, 1993, Sony filed a motion for a summary judgment of non-infringement of the asserted claims of the '485 patent. Relying on Loral's position throughout the litigation, Sony argued: "[T]he issue of infringement for all four asserted claims need only focus on the portion in issue of the structure of the Sony CCDs." *See* Memorandum in Support of Defendants Sony Corporation and Sony Electronics Inc. Motion for Partial Summary Judgment of Non–Infringement of the Asserted Claims of the '485 Patent, October 7, 1993, at 26 n. 12. In response, Loral argued:

It is clear that the Sony charge sink means is located beneath and not in contact with the surface so as to be "buried within" the

semiconductor material and as discussed in Dr. Barbe's declaration and will be shown at trial, performs the same function stated in the claim language with an equivalent structure in accordance with § 112 [para.] 6. Accordingly, Sony's CCD literally satisfies element 1(d) of claim 1 of the ['485] Patent as well as the corresponding limitation in claims 3, 7, & 8.

*See* Loral Fairchild's Opposition to Sony's Motion for Partial Summary Judgment of Non–Infringement of the '485 Patent, August 11, 1994, at 27 (internal quotations omitted). In reply, Sony noted "Fairchild and Sony agree that this non-infringement motion can be determined by focusing only on claim 1." *See* Sony's Reply to Loral Fairchild's Opposition to Sony's Motion for Partial Summary Judgment of Non–Infringement of the '485 Patent, August 31, 1994, at 1 n. 2.

Before resolving summary judgment motions and in advance of its *Markman* hearing on September 19 and 20, 1995, this court requested additional briefing on the meaning of the claims. In that briefing the parties repeated similar arguments. Loral stated: "The various elements specified for the vertical overflow structure in the preamble of claim 7 have the same meaning as described previously in connection with claim 1." *See* Loral Fairchild Corp.'s Memorandum Concerning the Proper Claim Construction with Respect to Claims 1, 3, 7 and 8 of U.S. Patent No. 3,896,485, August 21, 1995, at 9. Moreover, one of the defendants argued "Claims 1, 3, 7, and 8 by their plain language exclude all charge sink structures that are not 'buried within' the substrate and 'beneath the surface,' which means they exclude the substrate itself as a drain." In response to this argument, Loral stated: "This assertion misrepresents the claim language", which says nothing about being buried within "the substrate," but which refers instead to being "buried within *said semi-conductor material*" and "beneath the surface of *said semi-conductor material.*" *See* Loral Fairchild Corp.'s Reply Memorandum Concerning the Proper Claim Construction with Respect to Claims 1, 3, 7 and 8 of U.S. Patent No. 3,896,485, September 5, 1995, at 11. Thus, Loral has consistently relied on the structure

of claim 1 to describe the methods of claims 7 and 8.

As noted, this court held a two-day *Markman* hearing on the meaning of the claim terms. At that hearing, Dr. Barbe, one of Loral's expert witnesses, testified: "[Claim 7 is] just a method of operating the structure of claim 1." *See* September 19, 1995, Transcript of Proceedings, at 63. On October 18, 1995, the court issued an Opinion and Order construing those portions of the claims upon which the parties then disagreed. *Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.,* 906 F.Supp. 798 (E.D.N.Y.1995). In that Opinion, the court construed claim 1 more narrowly than had been advocated by Loral.

After issuing that Opinion, the court invited the parties to renew previously filed motions for a summary judgment on a number of issues. In the renewed briefing, Loral asserted that claims 7 and 8 do not include the same structural limitations as in claim 1 and therefore describe methods of using structures broader than described in claim 1. This sparked a new dispute among the parties as to the proper scope of claims 7 and 8.

In a letter dated November 27, 1995, Sony hinted at the new dispute by suggesting that the court construe claims 7 and 8 to help streamline matters. In that letter, Sony argued the only reasonable interpretation of claims 7 and 8 limited them to methods of operating the structure of claim 1. By letter dated December 8, 1995, Loral responded to Sony's letter by arguing that claim 7 "does not have the same structural limitations as claim 1" consistent with its arguments in opposition to Sony's renewed summary judgment motion.

The court heard oral argument on the renewed motions for a summary judgment on December 11, 1995. Both sides again presented arguments on their respective positions on claims 7 and 8. Following oral argument, the court issued an order denying in part and granting in part Sony's renewed motion for a summary judgment. *See Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.,* Nos. 92–128 and 91–5056 (E.D.N.Y. Dec. 15, 1995) (order granting in part and denying in part Sony's motion for a summary judgment of non-infringement of the '485 patent and

denying Toshiba's motion for a summary judgment of invalidity of the '485 patent). In that order, this court deferred the issue of the meaning of claims 7 and 8 pending an application for relief by Sony.

On December 22, 1995, Loral served a further discovery response on Sony updating its infringement contentions. *See* Ex. 12 to Sony's Memorandum (attaching Loral's supplemental update to its response to Sony's interrogatories). Loral's response points Sony to certain expert reports. Those reports, in turn, provide analysis only of claims 1 and 3. None of the reports set forth separate infringement contentions for claim 7 or identify how claim 7 could describe the use of a different structure than in claim 1.

On December 29, 1995, Sony filed the current motion and notified all of the parties that the motion would be argued at the January 2, 1996, pretrial conference. During that proceeding, this court heard oral argument on Sony's motion and offered each party another opportunity to fully respond and exhaust their arguments on this issue.

## DISCUSSION

■ Sony seeks an order precluding Loral from contesting that claims 7 and 8 are limited to methods of operating the structure of claim 1 in the '485 patent. Sony grounds its motion on the unfairness which would inure to Sony if Loral changes its theory of liability in light of the court's *Markman* Opinion construing claim 1 of the '485 patent.

### *Ramifications of Markman*

This dispute highlights some of the ramifications for patent cases flowing from the United States Court of Appeals for the Federal Circuit's decision in *Markman v. Westview Instr., Inc.,* 52 F.3d 967 (Fed.Cir.1995) (en banc). After *Markman,* a trial judge must determine as questions of law the meaning of patent claims. The meaning of claim terms is the central issue of patent litigation. With most aspects of trial hinging on this determination—now "strictly a question of law for the court", *Id.* at 977—a conscientious court will generally endeavor to make this ruling before trial. A trial court faced with conflicting views of technical

terms may prudently enlist the aid of qualified experts to determine the meaning of the claim terms. As in this case, this proceeding to assist the court in ascertaining the law is likely to occur after discovery in which the parties have exchanged information relevant to their understanding of the claims.

Once the court resolves the meaning of the claims, this new pronouncement of the meaning of claim terms may, as in this case, generate more disputes. In essence the court has merely elaborated on "the normally terse" claim terms in an effort to resolve disputes. *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1580 (Fed. Cir.1991). However, the skillful lawyer finds ambiguity even in attempted precision. Unchecked, the parties' new interpretations of the claim language in light of the court's legal meaning may begin the trial process, including discovery and depositions, anew. Thus, a trial court—in the wake of articulating a legal meaning of claim terms—must carefully police the parties' new theories of liability or defenses to prevent prejudice after the close of discovery.

Under Loral's pre-*Markman* hearing theory of liability, claims 7 and 8 were methods of operating the structure of claim 1. Its statements and expert reports followed accordingly. Therefore, the parties focused their disputes and discovery on the structure in claim 1. Loral apparently foresaw no the need to urge alternative theories based on differences in the words of claims 1 and 7.

However, when this court interpreted claim 1 more narrowly than Loral had advocated, Loral discerned new meaning in the claim language of claim 7, a position it would have been unable to take had the court waited until just before it instructed the jury to construe the claims. In essence, Loral changed its theory of liability. Loral began to advocate a different meaning for the language in claim 7.

### *Sony's Motion for Sanctions*

■ The Federal Rules of Civil Procedure are designed to eliminate surprise. *Mawby v. United States,* 999 F.2d 1252, 1254 (8th Cir.1993). To facilitate that objective, Rule 26(e) requires a party to supplement re-

sponses to formal discovery requests whenever that party learns that its prior disclosures or responses are incomplete or incorrect. *Thibeault v. Square D. Co.*, 960 F.2d 239, 244 (1st Cir.1992). Where a party does not comply with the requirements of Rule 26(e), a trial court may fashion sanctions to provide a remedy for the unfairly surprised party. *Outley v. City of New York*, 837 F.2d 587, 589 (2d Cir.1988); *Meyers v. Pennypack Woods Home Ownership Assoc.*, 559 F.2d 894, 904–05 (3d Cir.1977).

By changing its positions on claims 7 and 8 of the '485 patent, Loral has imposed a new theory of liability on Sony. Should a jury find that the structure in claim 1 does not describe Sony's CCDs, it could, nonetheless, find liability under claims 7 and 8. Throughout the litigation, Loral, however, had maintained that claims 7 and 8 merely describe methods of operating the structure described in claim 1. Thus, claims 7 and 8 could not be infringed absent infringement of claim 1. Loral's discovery responses followed this theory. To suddenly now assert potential liability of claims 7 and 8 in the absence of liability under claim 1 would be unfair to Sony, particularly in light of the fact that Loral has not even attempted to update its expert reports or discovery responses in this regard. *Holiday Inns, Inc. v. Robertshaw Controls, Co.*, 560 F.2d 856, 857–58 (7th Cir.1977).

At the outset of this litigation, Loral could have proceeded under alternative theories. For example, it could have maintained that under a broad reading of claim 1, claims 7 and 8 merely described methods of operating the structure of claim 1. Alternatively, under a more narrow reading of claim 1, Loral could have maintained that claims 7 and 8 describe the operation of a different structure. Its experts may have so opined, and its discovery responses could have fairly represented this position. Loral chose not to follow this path. Instead, Loral and its experts consistently maintained infringement of claims 7 and 8 depended on infringement of claim 1.

Moreover, Loral has not supplemented its expert reports to focus on its new position with respect to claims 7 and 8. As late as December 22, 1995, eighteen days after Loral

first raised its new theory and seventeen days before trial, Loral's discovery responses do not address claim 7 and 8 independent of claim 1. Loral continues to rely on infringement contentions with regard to claims 1 and 3, which depends from claim 1, for its position as to claims 7 and 8. Moreover, at oral argument on this motion, Loral made no effort to afford Sony proper discovery responses consistent with the Federal Rules of Civil Procedure. Lastly, the court has cautioned Loral in the past concerning its discovery responses and the content of its expert reports. Consequently, this court finds Loral has not complied with Fed.R.Civ.P. 26(e). Sony would be substantially prejudiced by Loral's new theory of liability particularly in the absence of proper notice as to the opinions of Loral's experts on the new theory. Consistent with its authority under the Federal Rules of Civil Procedure, the court will sanction Loral by precluding it from contesting that claims 7 and 8 are limited to methods of operating the structure of claim 1.

■ In the alternative, equitable principles of estoppel also bar Loral from altering its position at this stage of the proceedings. While the Federal Rules of Civil Procedure clearly contemplate shifting or alternative positions in a single actions, the court finds Loral judicially estopped under the unique facts and circumstances of this case. *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4477 (1981 & 1993 Supp.) (describing the principles of judicial estoppel).

Loral has pursued a single theory of liability for nearly four years. Discovery is closed and motions for a summary judgment have been decided. Moreover, before the court in connection with the *Markman* proceeding Loral made no effort to call attention to a possible alternative theory that claims 7 and 8 were broader than claim 1. In fact, as noted, faced with the argument that claims 1, 3, 7 and 8 required the charge sink structure to be "buried within" the substrate, Loral's only argument in its reply brief was that the claim language "says nothing about being buried within 'the substrate,' but which refers instead to being 'buried within *said*

*semi-conductor material*' and 'beneath the surface of *said semiconductor material.*' " One would have expected Loral to note, as they now do, that claims 7 and 8 do not contain the words "buried within" and thus could be broader in scope. However, Loral, consistent with its position throughout the trial, did not advance this theory. Consequently, the court finds Loral is estopped from changing its theory at this late date.

Lastly, the court notes Loral's own technical expert witness, Dr. Barbe, testified that claims 7 and 8 "just" describe a "method of operating the structure of claim 1." As claims are interpreted according to the understanding of those skilled in the art, this court—exercising its obligation under *Markman*—interprets claims 7 and 8 to incorporate the structure of claim 1. This court also notes, having extensively reviewed the specification and prosecution history of the '485 patent, that those sources support this interpretation as well.

## CONCLUSION

For these reasons, the court grants Sony's motion for sanctions. Loral is precluded from contesting that claims 7 and 8 are limited to methods of operating the structure described in claim 1. The court will enter an Order in accordance with this Memorandum Opinion.